

**NUMBER 13-08-00495-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**INA NICOLE GARCIA,** **Appellant,**

**v.**

**DOUGLAS EDWARD TAUTENHAHN,** **Appellee.**

---

**On appeal from the 430th District Court
of Hidalgo County, Texas.**

---

**OPINION**

**Before Justices Yañez, Rodriguez, and Benavides
Opinion by Justice Yañez**

By one issue, appellant, Ina Nicole Garcia, appeals the trial court's denial of her application for a sexual assault protective order against appellee, Douglas Edward Tautenhahn. We affirm.

**I. BACKGROUND**

On April 8, 2008, the trial court held a hearing on Garcia's application for a sexual assault protective order. Garcia and Oralia Jaure, a sexual assault educator and advocate, testified at the hearing. Tautenhahn appeared at the hearing without counsel and did not testify or present evidence.

Garcia testified that she met Tautenhahn in July 2006, when she lived in San Antonio, Texas. According to Garcia, she and a friend picked up Tautenhahn and went to a night club.[1] Garcia stated that Tautenhahn bought her two drinks and that she did not remember anything else that happened that evening. Garcia testified that when she woke up the next morning, she did not know where she was and that she called her friend, who informed her that she was at Tautenhahn's residence. One of Garcia's friends then picked her up.

Garcia stated that Tautenhahn called her later that afternoon and asked her if she "was on birth control" and then told her "not to worry" because she "wasn't going to get pregnant." Although Garcia suspected that she had been "drugged" by Tautenhahn, she explained that she did not discover that Tautenhahn had "raped" her until one month later when she found out that she was pregnant. Garcia testified that in July of 2006, after the sexual assault occurred, Tautenhahn came uninvited to her dorm room to "see if [she] was pregnant." Garcia stated that Tautenhahn "saw" that she was pregnant, and she informed him that she did not know who the father of the child was.

Garcia filed a police report in December 2006 and went to the Rape Crisis Center for counseling. The trial court admitted into evidence Exhibits 1 and 2, questionnaires from the Rape Crisis Center used to evaluate Garcia. After completing the questionnaires, Garcia was diagnosed as suffering from depression and post-traumatic stress disorder.

Garcia gave birth to her daughter on April 4, 2007, and eventually moved back to the "Valley." Garcia also contacted the Attorney General's office in order to establish the child's paternity. A DNA test revealed that Tautenhahn is the father. At a conference with the Attorney General, Tautenhahn said that he wanted to see the child.

Garcia stated Tautenhahn has "contacted people [she] know[s] and asked them about [the baby and Garcia]." Tautenhahn's sister also contacted Garcia through an email sent to Garcia's MySpace account in March 2008. The trial court admitted the message

---

[1] Garcia stated that she had not met Tautenhahn before that evening.

2

into evidence as Exhibit 3. Garcia stated she does not want Tautenhahn near her or her child because she is scared. Garcia testified that she is afraid that Tautenhahn could "easily do something" to her child and that contact with him would "break [Garcia] down emotionally."

Jaure testified that she works at the Family Crisis Center and works with victims of sexual assault. According to Jaure, many victims do not report a sexual assault or wait to report an assault because they are ashamed or embarrassed. Jaure stated that a sexual assault affects the victim in "many ways: denial, shock, fear" and that the long-term effects include "[i]nsecurity, fear, [they are ]afraid to be in public." Jaure explained that additional contact with the assailant does not allow the victim of the sexual assault to heal and that a victim of a sexual assault perceives any contact with the assailant as a threat because the victim does not feel safe.

The trial court denied Garcia's application for a sexual assault protective order. Garcia requested findings of fact and conclusions of law, which the trial court entered on June 27, 2008. In its findings of fact, the trial court found from the evidence that there existed "reasonable grounds to believe that [Garcia] was the victim of a sexual assault by [Tautenhahn]"; however, the trial court also stated in its findings of fact that it "[did] not find that [Garcia was] the subject of a threat that reasonably place[d] [her] in fear of further harm from [Tautenhahn]." Based on its findings, the trial court concluded that the protective order should be denied.

## II. SUFFICIENCY OF THE EVIDENCE

By her sole issue, Garcia challenges the trial court's finding that she was not the subject of a threat that reasonably placed her in fear of further harm from Tautenhahn. Specifically, Garcia argues that the evidence established that she was in fear of future emotional harm from contact with Tautenhahn, that she suffered emotional harm as a

3

result of the sexual assault, that Tautenhahn sought contact with her after she had a child,[2] that she was afraid of further harm if Tautenhahn was allowed to contact her or her child, and that her fear was reasonable.

## A.  Standard of Review

When the trial court denies a protective order, this Court applies a legal and factual sufficiency standard of review.[3]  Furthermore, when a party challenges the trial court's findings of fact, as in this case, we review those findings by the same standards we use in reviewing the sufficiency of the evidence supporting a jury's answers.[4]  If there is any evidence of a probative nature to support the trial court's judgment, we will not set it aside, and we may not substitute our findings of fact for those of the trial court.[5]

A party with the burden of proof at trial challenging the legal sufficiency of an adverse finding on appeal must demonstrate that the evidence presented establishes as a matter of law all vital facts in support of the issue.[6]  If there is no evidence to support the finding, we will examine the entire record and determine if the contrary proposition is established as a matter of law.[7]  We will sustain the issue only if the contrary proposition is conclusively established.[8]  In a legal sufficiency review, we must view the evidence in the

---

[2] We note that there was no evidence presented that Tautenhahn contacted Garcia after the birth of the child.

[3] *See Clements v. Haskovec*, 251 S.W.3d 79, 84 (Tex. App.–Corpus Christi 2008, no pet.) (providing that when reviewing the denial of a protective order, this Court employs a legal and factual sufficiency standard, while other courts of appeals employ an abuse of discretion standard); *see also In the Interest of I.E.W.*, No. 13-09-00216-CV, 2010 Tex. App. LEXIS 404, at *28 n.6 (Tex. App.–Corpus Christi Jan. 21, 2010, no pet. h.) (mem. op.) (noting that "Texas appellate courts are divided over the proper standard to employ in reviewing the evidence supporting protective orders" and citing *Clements* as applying a legal and factual sufficiency standard of review).

[4] *Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Commc'ns Corp.*, 49 S.W.3d 520, 528-29 (Tex. App.–Corpus Christi 2001, pet. denied).

[5] *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 609 (Tex. 1979); *Caprock Commc'ns Corp.*, 49 S.W.3d at 529.

[6] *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

[7] *Id.*

[8] *Id.*

light most favorable to the verdict, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not.[9] The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.[10]

A party challenging an adverse finding as factually insufficient must show that the finding is against the great weight and preponderance of the evidence.[11] In a factual sufficiency review, we must consider and weigh all of the evidence.[12] To set aside the verdict, we must "detail the evidence relevant to the issue" and then state why the finding is against the great weight and preponderance of the evidence.[13]

## B. Applicable Law

In this case, the statute provides that an applicant is entitled to a sexual assault protective order if the trial court finds that there are "reasonable grounds to believe that the applicant is the victim of a sexual assault" and that the applicant is "the subject of a threat that reasonably places the applicant in fear of further harm from the alleged offender."[14] If those two findings are made, the trial court "shall issue a protective order that includes a statement of the required findings."[15]

## C. Discussion

Garcia argues that the evidence "conclusively establishe[d] that Tautenhahn sexually assaulted her, and that Garcia suffered emotional harm as a result." The trial court found that Tautenhahn sexually assaulted Garcia and that finding is not disputed.

---

[9] *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

[10] *Id.* at 822.

[11] *Dow Chem. Co.*, 46 S.W.3d at 242.

[12] *Id.*

[13] *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

[14] EX. CODE CRIM. PROC. ANN. art. 7A.03 (Vernon Supp. 2009).

[15] *Id.*

However, to issue the protective order under the statute, the trial court was required to also find that Garcia was the subject of a *threat* that reasonably placed her in fear of *further* harm from Tautenhahn.[16] Here, the trial did not make that required finding and instead found that Garcia was not the subject of a threat that reasonably placed her in fear of further harm from Tautenhahn. Therefore, the issue is not whether Garcia suffered harm as a result of the sexual assault, but whether the evidence was sufficient to support the trial court's adverse finding.

Garcia claims that the following evidence conclusively establishes that she was the subject of a threat of further harm from Tautenhahn: (1) during her pregnancy, Tautenhahn went to her dorm room uninvited to see if she was pregnant; (2) after the birth of the child, Tautenhahn contacted people Garcia knew asking about her and the child; (3) Tautenhahn told "the Office of the Attorney General" that he wanted to see the child; and (4) Tautenhahn's sister contacted Garcia via MySpace requesting to see her brother's baby, "which established that Tautenhahn was representing to his family members that he had a child with Garcia." Garcia argues that the threat she feared was not from physical harm but from "threats to have or seek a relationship with Garcia and her child."

Evidence that Tautenhahn's sister contacted Garcia is not probative of whether Tautenhahn subjected Garcia to a threat reasonably placing her in fear of further harm, because the person contacting Garcia was not Tautenhahn.[17] Next, the fact that Tautenhahn *expressed* his desire to see his child does not establish a threat of further harm to Garcia; he was merely informing the Attorney General of his wish to see his child, and there was no evidence presented that he actually contacted either his child or Garcia after paternity had been established. Finally, Tautenhahn's contact with people Garcia knows has no bearing on whether he subjected her to a threat of further harm because by speaking to "people" she knew; he was neither contacting Garcia nor causing her

---

[16] *See id.*

[17] *See id.* (providing that the threat must be from the alleged offender).

6

emotional harm.[18]  Furthermore, there was no evidence presented that the contact from Tautenhahn's sister, Tautenhahn's statements that he wanted to see his child, or Tautenhahn's contact with people Garcia knew would cause Garcia emotional harm.

Jaure testified that a victim of a sexual assault perceives any contact with the person who sexually assaulted her as a threat because the victim does not feel safe. Garcia stated that she is scared of Tautenhahn and that contact with him would break her down emotionally.  It appears that the threat that Garcia claims to have reasonably feared from Tautenhahn was further contact with him that would cause further emotional harm.[19]

Based on the evidence presented, the trial court did not believe that Tautenhahn's only contact with Garcia—two years prior to her application for a protective order—supported a finding that Tautenhahn subjected Garcia to a *threat*.[20]  A threat is defined as "an expression of intention to inflict evil, injury, or damage" or "an indication of something impending."[21]

Although Garcia may have been fearful of further contact with Tautenhahn because it would cause her emotional harm, the evidence presented did not establish that Tautenhahn intended to inflict injury or damage to Garcia or that he intended to contact her and cause her further emotional harm.  Therefore, the trial court found that Garcia's fear of further harm from Tautenhahn was not reasonable.

Viewing the evidence in the light most favorable to the trial court's finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence

---

[18] In her application for a protective order, Garcia did not request that Tautenhahn be prohibited from speaking to people she knew.

[19] Garcia also argues that the statute "contemplates that the threat that places a victim in fear of further harm may include the threat of emotional harm."  We assume, without deciding, that the statute contemplates a threat of emotional harm.

[20] The word "threat" is not defined by the code of criminal procedure.  *See Medford v. State*, 13 S.W.3d 769, 771-72 (Tex. Crim. App. 2000) (providing that words not specially defined by the Legislature are to be understood as ordinary usage allows) (citing *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (en banc)).

[21] MERRIAM-WEBSTER ONLINE DICTIONARY, *available at* http://www.merriam-webster.com/dictionary/threat (last visited April 13, 2010).

unless a reasonable fact-finder could not, we conclude that the evidence presented did not conclusively establish as a matter of law that Tautenhahn subjected Garcia to a threat that reasonably placed her in fear of further harm.[22] Furthermore, after considering and weighing all of the evidence, we cannot conclude that the trial court's finding is against the great weight and preponderance of the evidence.[23] The evidence was legally and factually sufficient to support the trial court's adverse finding. We overrule Garcia's sole issue.[24]

### III. RESPONSE TO THE DISSENT

The dissent argues that "the focus of the statute is on whether the *applicant* feels a threat of further harm, not on whether the alleged offender overtly threatens to harm her." We disagree. The statute requires a finding that the applicant was the subject of a threat that *reasonably* placed her in fear of further harm from the alleged offender.[25]

Even assuming, as the dissent argues, that the proper definition of a threat is found in Black's Law Dictionary, whether Garcia was "the subject" of a threat depends on whether there was "an indication of an approaching menace" that *reasonably* placed her in fear of further harm—i. e., contact—from Tautenhahn. However, in this case, there is no evidence that Tautenhahn threatened *further* contact with Garcia, either directly or indirectly.

Moreover, our decision does not permit or condone, as the dissent suggests, "an alleged sexual assault offender to surreptitiously contact his victim, reasonably placing her in fear of further harm, while avoiding the imposition of a sexual assault protective order." Here, there is no evidence that Tautenhahn instructed his sister or any other person to contact Garcia. Also, although Tautenhahn told the Attorney General's office that he would

---

[22] *See City of Keller*, 168 S.W.3d at 807.

[23] *See Dow Chem. Co.*, 46 S.W.3d at 242.

[24] We note that our disposition in this case does not prevent Garcia from presenting evidence that further contact with Tautenhahn will cause her emotional harm should a hearing be held to determine whether Tautenhahn be allowed visitation with the child. Moreover, if a trial court grants visitation, Garcia may request that the visitations be supervised and that a third party be required to make the transfer of the child to Tautenhahn.

[25] TEX. CODE CRIM. PROC. ANN. art. 7A.03 (emphasis added).

8

like to see his child, there is no evidence he threatened to contact Garcia for that purpose.[26] We can not infer that by making inquiries to others about Garcia and the child, Tautenhahn was threatening to contact Garcia.

## IV. CONCLUSION

We affirm the trial court's ruling.

LINDA REYNA YAÑEZ,
Justice

Dissenting Opinion by
Justice Gina M. Benavides.

Delivered and filed the
27th day of May, 2010.

---

[26] We note that the trial court heard evidence that Garcia initiated the contact with the Attorney General's office to establish Tautenhahn's paternity.