

**NUMBER 13-12-00308-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**CENIZO CORPORATION,**            **Appellant,**

**v.**

**CITY OF DONNA,**            **Appellee.**

---

**On appeal from the County Court at Law No. 7
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Perkes
Memorandum Opinion by Justice Garza**

In this inverse condemnation case, appellant Cenizo Corporation ("Cenizo") appeals the trial court's judgment in favor of appellee, the City of Donna ("the City"). By seventy-seven issues, Cenizo challenges the sufficiency of the evidence supporting the trial court's findings of fact and conclusions of law. We affirm.

# I. BACKGROUND

Many of the facts involved in this case are undisputed. Cenizo is a farming operation that grows crops on leased acreage in the Rio Grande Valley. Thomas Jendrusch, a primary owner of Cenizo, testified at the bench trial. The issue in this case is whether the City, by plugging drainage pipes directing water away from Cenizo's soybean crop in July 2008, damaged Cenizo's property such that the City's actions constituted an unconstitutional "taking" under the Texas Constitution.

The property at issue is a fifty-three-acre parcel located on the west side of Hutto Road in Donna, Texas. Cenizo sub-leased the property from Allen W. Cohrs, who, in turn, leased the property from the Ennis family, the owners of the property.

Around July 4, 2008, the area received approximately seven inches of rain. Several weeks later, in late July, the entire Rio Grande Valley was indundated by heavy rains associated with Hurricane Dolly, which caused widespread flooding. The Cenizo soybean field received heavy rain—around twenty-two to thirty inches—which flooded the field.

The property naturally drains from west to east. Two drainage pipes direct water away from the property and to the east, passing underneath Hutto Road. The drainage pipes were installed decades earlier by an unknown party and are neither owned nor maintained by the City. In order to protect residences on the east side of Hutto Road from further flooding, P.R. Avila, the city manager at the time, instructed City crews to block the drainage pipes. Portions of the soybean field were underwater for up to two weeks.

Cenizo sued the City, asserting that, as a result of the City's blocking the drainage pipes on Cenizo's property, rainwater was prevented from draining from its

2

soybean crop, resulting in a reduced crop yield from the field. Cenizo asserted that the City's actions constituted an unconstitutional "taking" of its property. Following a bench trial, the trial court found that no taking had occurred and rendered a take nothing judgment in the City's favor.

The trial court issued forty-four findings of fact and thirteen conclusions of law. On appeal, Cenizo challenges the sufficiency of the evidence supporting the trial court's findings of fact numbered 5, 10, 15, 19 through 21, and 24 through 43.[1] Cenizo also challenges three of the trial court's conclusions of law—numbers 10, 11, and 13.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Findings of fact in a bench trial have the same force and effect as findings by the jury. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 147 (Tex. App.—Dallas 2012, no pet.). If there is any evidence of a probative nature to support the trial court's judgment, we will not set it aside, and if there is any evidence in the record to sustain the trial court's findings, we may not substitute our findings of fact for those of the trial court. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 609 (Tex. 1979); *Garcia v. Tautenhahn,* 314 S.W.3d 541, 544 (Tex. App.—Corpus Christi 2010, no pet.). We review the trial court's findings of fact by the same standards we use in reviewing the sufficiency of the evidence supporting a jury's answers. *Garcia,* 314 S.W.3d at 544. Unchallenged findings of fact are binding on the appellate court, unless the contrary is established as a matter of law or there is no evidence to support the finding. *Sharifi*, 370 S.W.3d at 147. When, as

---

[1] Cenizo contends that findings 28 and 29 are "unnecessary to the judgment." As to the other challenged findings of fact, Cenizo contends that there is either "no evidence" to support the finding, "insufficient evidence" to support the finding, or that the finding "is contrary to the preponderance of the evidence."

here, the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for sufficiency of the evidence. *Id.*

If a party with the burden of proof—here, Cenizo—challenges the legal sufficiency of an adverse finding, we must determine whether the complaining party has demonstrated on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *See Barnes v. Mathis,* 353 S.W.3d 760, 762 (Tex. 2011); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *Garcia,* 314 S.W.3d at 544; *see also Perez v. Perez*, No. 13-11-00169-CV, 2013 WL 398932, at *4 (Tex. App.—Corpus Christi Jan. 31, 2013, no pet.) (mem. op.). In a "matter of law" challenge, we "first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Dow Chem. Co.,* 46 S.W.3d at 241. If there is no evidence to support the finding, we will examine the entire record in order to determine whether the contrary proposition is established as a matter of law. *Id.*; *Garcia,* 314 S.W.3d at 544. We will sustain the issue if the contrary proposition is conclusively established. *Dow Chem. Co.,* 46 S.W.3d at 241; *Garcia,* 314 S.W.3d at 544. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Garcia,* 314 S.W.3d at 544.

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Garcia,* 314 S.W.3d at 544. The court of appeals must consider and weigh all of the evidence and can set aside a verdict only if the evidence is so weak

4

or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242.

The Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17. To establish a takings claim, Cenizo must prove that (1) the City intentionally performed certain acts (2) that resulted in a taking of property (3) for public use. *City of Anson v. Harper,* 216 S.W.3d 384, 391 (Tex. App.—Eastland 2006, no pet.) (citing *Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001)); *see Strother v. City of Rockwall*, 358 S.W.3d 462, 467 (Tex. App.—Dallas 2012, no pet.). The determination of whether a taking has occurred is a question of law. *City of Austin v. Travis County Landfill Co.*, 73 S.W.3d 234, 241 (Tex. 2002).

"'Taking,' 'damaging,' and 'destruction' of one's property are three distinct claims arising under [a]rticle 1, [s]ection 17 [of the Texas Constitution]." *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 n.2 (Tex. 2004). "[T]he term 'taking' has become used as a shorthand to refer to all three types of claims." *Id.* "[W]hen a governmental entity physically damages private property in order to confer a public benefit, the entity may be liable under article I, section 17 if it: (1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized governmental action." *Id.* at 314; *see also City of Del Rio v. Felton*, No. 04-06-00091, 2007 WL 247655, at *6 (Tex. App.—San Antonio Jan. 31, 2007, no pet.) (mem. op.). "The government's knowledge must be determined as of the time it acted, not with benefit of hindsight." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009).

"A 'taking' by flooding is a specific type of 'taking.'" *Howard v. City of Kerrville*, 75 S.W.3d 112, 117 (Tex. App.—San Antonio 2002, pet. denied). "In the case of flood-water impacts, recurrence is a probative factor in determining the extent of the taking and whether it is necessarily incident to authorized government activity, and therefore substantially certain to occur." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004). "While nonrecurrent flooding may cause damage, a single flood event does not generally rise to the level of a taking." *Id.*; *see Bexar County v. Colombrito*, No. 04-12-00284, 2012 WL 6743569, at *4 (Tex. App.—San Antonio Dec. 31, 2012, no pet.) (mem. op.) (same); *Ahart v. Tex. Dep't of Transp.*, No. 14-05-00027-CV, 2006 WL 2167223, at *3 (Tex. App.—Houston [14th Dist.] Aug. 1, 2006, pet. denied) (mem. op.) (same); *Evatt v. Tex. Dep't of Transp.*, No. 11-05-00031, 2006 WL 1349352, at *5 (Tex. App.—Eastland May 18, 2006, pet. denied) (mem. op.) (same).

## III. DISCUSSION

By issues fifty-four through sixty-five, Cenizo challenges the sufficiency of the evidence supporting the trial court's findings of fact regarding the intent element of its inverse condemnation claim. Specifically, the findings of fact challenged by Cenizo include the following:

37. Plaintiff did not establish Defendant had the state of mind to know that any of its actions would cause damage to occur on the subject property.

38. Defendant did not have the state of mind to know that any of its actions would cause damage to occur on the subject property.

39. Plaintiff did not establish Defendant had the state of mind to know that "identifiable harm was occurring or substantially certain to result" to the subject property.

6

40. Defendant did not have the state of mind to know that "identifiable harm was occurring or substantially certain to result" to the subject property or Plaintiff's soybean crop.

The intent element was also implicated in the trial court's conclusion of law number 13, which stated:

13. Without "evidence of 'objective indicia of intent' showing the City knew identifiable harm was occurring or substantially certain to result," Plaintiff cannot establish an intentional taking. *City of Keller v. Wilson*, 168 S.W.3d 802, 830 (Tex. 2005).

As noted, to establish the intent element, Cenizo was required to establish that the City (1) knew that a specific act—plugging the drainage pipes—was causing identifiable harm; or (2) knew that the specific property damage—the reduction in the yield of the soybean crop—was substantially certain to result from its plugging of the drainage pipes. *See Jennings*, 142 S.W.3d at 314.

To support its argument that the evidence is legally and factually insufficient to support the trial court's findings of fact regarding the City's intent, Cenizo points to Jendrusch's undisputed testimony that he told Avila that standing water would damage the soybean crop. The entire argument section of Cenizo's brief addressing these issues consists of the following:

The City Manager knew that standing water would damage Cenizo's crop because he had been told. The City Manager also knew that the water continued to stand in the field because he saw it. The City Manager knew that he had been asked to open the drains, and knew that the drains had not been opened. Avila admits that Jendrusch told him standing water would damage the crop. Avila simply didn't care about any damage to the crop. The City of Donna knew that the drain closure would damage Cenizo's crop and chose to close the drain anyway. This was a calculated decision to sacrifice Cenizo's crop for the benefit of residents on the east side of Hutto Road.

Jendrusch testified that he explained to Avila that standing water would damage his crop. Avila testified that he gave the instructions to block the drains to prevent

7

flooding to the 100 to 200 homes on the east side of Hutto Road. After consulting with George Garrett, the emergency management coordinator for the City and for the City of Weslaco, Avila decided to plug the drains to slow the flow of water from west to east. Avila testified as follows:

Q [City's counsel]: Now, Mr. Jendrusch has said he told you that his crop would get damaged or it was getting damaged, that it had problems if it soaks in water for an extended period of time. Do you remember him talking to you about that?

A [Avila]: Yes, sir, he sure did.

Q: Okay. Did you expect the fields to be under water for a long period of time?

A: No, sir, I sure didn't.

Q: Okay. Did you intend to cause him any damage?

A: There was no intention at all.

Q: Did you know how long his fields would be under water?

A: No, sir.

Q: Were you substantially certain—did you know damage to his crop was substantially certain for any reason?

A: No, sir.

Q: In other words, is there any way for you to know whether or to what degree he would have any damage to his crop at the time you blocked those drains?

A: No, sir.

Q: For that matter, you don't know how much water would have gone through those drains even if they were left open, right?

8

A:         No, sir. I think you said when—if they were left open. They were just temporary blocked. There was still some water going through but not as full force as some of the pictures would show.

Q:         So as far as what damage would have occurred, you have no way of knowing that one way or the other, right?

A:         No, sir.

Q:         So you couldn't have been certain that damage would've occurred.

A:         Correct.

On cross-examination, the following exchange occurred:

Q [Cenizo's counsel]:   Okay. So you said you didn't know how long [the water] was going to stay there on the—at the day the drain was blocked, right?

A:         Correct.

Q:         But did you know that it was staying there when you went by there from time to time? You saw that the water was still there; didn't you?

A:         Yes.

Q:         And Mr. Jendrusch had told you that he was doing—that this was going to damage his crop, hadn't he?

A:         He had mentioned that previously before, yes, sir.

Avila's testimony established that he knew Cenizo's soybean crop would be damaged if it was under water for an extended period of time, but that he did not know, at the time the City blocked the drains, how long the field would be under water or whether any damage would result. This testimony constitutes some evidence supporting the trial court's findings that the City did not know that its actions would cause damage and did not know that identifiable harm was occurring or was

9

substantially certain to result to Cenizo's property. *See id.; Pollock*, 284 S.W.3d at 821 ("The governmental entity's awareness of the mere possibility of damage is no evidence of intent.").

Viewing the evidence in the light most favorable to the trial court's finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not, *see Garcia*, 314 S.W.3d at 544, we conclude that the evidence did not conclusively establish as a matter of law that the City knew that its blocking the drain pipes caused identifiable harm or that it knew damage to Cenizo's soybean crop was substantially certain to result from its actions. *See Jennings*, 142 S.W.3d at 314. Furthermore, after considering and weighing all of the evidence, we cannot conclude that the trial court's findings are against the great weight and preponderance of the evidence. *See Garcia*, 314 S.W.3d at 544. The evidence was legally and factually sufficient to support the trial court's adverse findings.

## IV. CONCLUSION

We overrule Cenizo's issues challenging the trial court's findings of fact 37 through 40 and its challenge to the trial court's conclusion of law number 13, and affirm the trial court's judgment.[2]

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
25th day of April, 2013.

---

[2] Because our disposition of these issues is dispositive, we need not address Cenizo's remaining issues. *See* TEX. R. APP. P. 47.1.