# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00472-CV

---

The State of Texas For the Protection of P. B., Appellant

v.

V. T., Appellee

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. C2018-0170A, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## O P I N I O N

The State of Texas appeals from the district court's order denying the State's application, filed on behalf of P.B., for a permanent protective order against appellee V.T., P.B.'s ex-boyfriend. *See* Tex. Code Crim. Proc. art. 7A.03. On appeal, the State asserts that the district court abused its discretion in failing to make adverse inferences against V.T. following his invocation of the Fifth Amendment privilege against self-incrimination and that there is insufficient evidence to support the district court's denial of the protective order. We will affirm the district court's order.

## BACKGROUND

In an affidavit that was attached to the State's application for a protective order, P.B. averred that she and V.T. had been in an "intimate relationship" from May 2017 until December 2017 and that during that time, she had "allowed [V.T.] to take a few photographs of

[her] while [she] was naked and take some videos of [V.T. and P.B.]" together. P.B. claimed that when she told V.T. that she wanted to end their relationship, he threatened to post and distribute online the videos and images of P.B. that he had in his possession unless she agreed to delete her online dating profile and have sex with him. P.B. stated that she agreed to have sex with V.T. "out of fear that he would follow through on his threats to post the pictures." P.B. further averred that when P.B. again attempted to end their relationship approximately two months later, V.T. renewed his threat to release the photographs. Additionally, P.B. claimed, V.T. had impersonated her online, posting an advertisement on Craigslist stating that P.B. "was looking for male company that night" and had "videos for proof." According to P.B., V.T. later texted her and apologized for posting the advertisement.

Based on the above allegations, the district court granted a temporary protective order on February 1, 2018, and set a hearing for February 16, 2018, on the State's request for a permanent protective order. After several resets of the hearing and extensions of the temporary protective order, the hearing was held on June 27, 2018.[1] However, on the morning of the hearing, the State sought a further extension because P.B., according to the prosecutor, was out of town on a "planned trip" that she had booked months earlier. Counsel for V.T. opposed the extension, arguing that V.T. was ready to proceed and that while "the alleged victim is on vacation," they were "here worried about this protective order." The district court denied the request for an extension, observing that the State "got this setting" and that "they ought to be ready to go."

---

[1] These resets and extensions appear to have been the result of multiple failed attempts to serve V.T. The record reflects that V.T. was not served until June 11, 2018.

2

The hearing was held that afternoon. Initially, the State asked the district court to take judicial notice of P.B.'s affidavit, summarized above, setting forth the specific allegations against V.T. Counsel for V.T. objected to the affidavit as hearsay, and it was not admitted into evidence. The State then called Detective Rebekah Coons of the Comal County Sheriff's Office, who testified that she had investigated V.T. for the offense of online impersonation. Detective Coons explained that she had reviewed a post on Craigslist that "made it look like [P.B.] had posted the ad looking for company for the night." Coons added that during the investigation, P.B. had given her text messages and emails from V.T. in which V.T. had apologized for posting the ad. Coons believed that it was "more likely than not it was [V.T.] who had sent the messages." The State also asked Coons if she believed that V.T. was responsible for online impersonation, and she answered in the affirmative. Counsel for V.T. objected to the lack of foundation for this testimony, arguing that "[t]here's no information provided as to how she drew these conclusions." Although the district court implicitly overruled the objection by "allowing [the State] to put forth this testimony," it noted that the testimony was "rather conclusory" and that it had "no foundation to base the conclusions." Finally, Coons testified that she had submitted a case against V.T. to the district attorney's office for the offense of online impersonation. The State did not elicit any further testimony from Coons pertaining to the status of that case.

Finally, the State called V.T. After counsel informed the district court that V.T. was "just going to plead the Fifth the whole time," the district court advised V.T. that although he had a "constitutional Fifth Amendment right to remain silent," exercising that right could be held against him in this civil proceeding. V.T. indicated that he understood that risk, and the State then proceeded to ask him numerous questions concerning his past relationship with P.B.

3

and her specific allegations against him. As we discuss in more detail below, in response to each question, V.T. answered, "I would like to plead the Fifth." The State presented no further evidence.

At the conclusion of the hearing, the district court denied the application for a permanent protective order against V.T. and later made findings of fact and conclusions of law. In its findings, the district court indicated that it did not consider either P.B.'s affidavit or her absence from the hearing in reaching its decision. Nevertheless, the district court also found that "absent [P.B.'s] live testimony, which would have given [V.T.'s] attorney an opportunity for cross-examination, the evidence proffered at the June 27, 2018, hearing was insufficient to show that [P.B.] is the victim of sexual assault or abuse, stalking, or trafficking." Additionally, although the district court found certain testimony by Detective Coons to be "credible and true," it also found that her "testimony, in and of itself," was insufficient to support the issuance of a protective order. Specifically, the district court found that "Detective Coons did not offer a sufficient evidentiary foundation for the text messages she referenced at the hearing" and that "the text messages attributed to [V.T.] are not a sufficient basis for a protective order." Finally, the district court made two adverse inferences against V.T. based on V.T.'s invocation of his Fifth Amendment privilege, finding that V.T. knew P.B. and that he had a relationship with her. However, the district court declined to make any other adverse inferences against V.T. The district court ultimately found that "there are not reasonable grounds to believe that P.B. was the victim of sexual assault or abuse, stalking, or trafficking," "due to the lack of admissible evidence and/or testimony relevant thereto." This appeal by the State followed.

4

**STANDARD OF REVIEW**

We review a trial court's decision to grant or deny a Chapter 7A protective order for legal and factual sufficiency of the evidence. *See Webb v. Schlagal*, 530 S.W.3d 793, 802 (Tex. App.—Eastland 2017, pet. denied); *Shoemaker v. State*, 493 S.W.3d 710, 714–15 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Garcia v. Tautenhahn*, 314 S.W.3d 541, 544 (Tex. App.—Corpus Christi 2010, no pet.); *see also Eckchum v. State*, No. 03-15-00270-CV, 2016 Tex. App. LEXIS 7096, at \*5–6 (Tex. App.—Austin July 7, 2016, no pet.) (mem. op.).

"When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *see Garcia*, 314 S.W.3d at 544. "In a legal sufficiency challenge, we consider whether the evidence at trial would enable a reasonable and fair-minded fact finder to reach the verdict under review." *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "We view the evidence in the light most favorable to the fact finding, indulging every reasonable inference that would support it and disregarding contrary evidence unless a reasonable factfinder could not." *Bos v. Smith*, 556 S.W.3d 293, 299–300 (Tex. 2018).

"When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242; *Garcia*, 314 S.W.3d at 544. "When reviewing an assertion that the evidence is factually insufficient to support a finding, a court of appeals sets aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, it determines

5

that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016). When conducting a factual sufficiency review, a court must not substitute its judgment for that of the factfinder, who "is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## ANALYSIS

Chapter 7A of the Code of Criminal Procedure allows victims of certain crimes to obtain permanent protective orders against the offenders who committed those crimes. *See* Tex. Code Crim. Proc. art. 7A.01–.03. If the trial court finds that "there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking," then the trial court "shall issue a protective order." *Id*. art. 7A.03(a)–(b). The order "may be effective for the duration of the lives of the offender and victim or for any shorter period stated in the order." *Id*. art. 7A.07(a).

However, Chapter 7A applies only to crimes that are specifically listed in the statute. Under the current version of Chapter 7A, those crimes are: continuous sexual abuse of a child; indecency with a child; sexual assault; aggravated sexual assault; stalking; trafficking of persons; continuous trafficking of persons; and compelling prostitution. *Id*. art. 7A.01(a).

The application for a protective order in this case did not specify the crime that V.T. allegedly committed, but instead alleged generally that P.B. was "a victim of sexual assault or abuse, stalking, or trafficking." Because there were no allegations in P.B.'s affidavit to suggest that V.T. had committed the offenses of sexual abuse or trafficking, the only possible

6

offenses that would authorize a permanent protective order in this case were sexual assault and stalking. The State had the burden to prove at the hearing that P.B. was a victim of one of those offenses. *See Webb*, 530 S.W.3d at 803–05; *Shoemaker*, 493 S.W.3d at 718–19; *Garcia*, 314 S.W.3d at 544–46.

A person commits the offense of sexual assault if the person intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent. Tex. Penal Code § 22.011(a)(1)(A). A sexual assault under Subsection (a)(1) is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force, violence, or coercion. *Id.* § 22.011(b)(1).

A person commits the offense of stalking if the person, "on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1) constitutes an offense under Section 42.07 . . .[2]

---

[2] Section 42.07, the harassment statute, provides that a person commits an offense if, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

(1) initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene;

(2) threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property;

(3) conveys, in a manner reasonably likely to alarm the person receiving the report, a false report, which is known by the conveyor to be false, that another person has suffered death or serious bodily injury;

7

(2) causes the other person . . . to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3) would cause a reasonable person to:

. . . .

(D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended."

Tex. Penal Code § 42.072.

The only evidence admitted at the hearing was Detective Coons's testimony, summarized above, and V.T.'s repeated invocation of his Fifth Amendment privilege against self-incrimination, which occurred as follows:

Q. State and spell your name for the record.

A. I plead the Fifth.

---

(4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

(5) makes a telephone call and intentionally fails to hang up or disengage the connection;

(6) knowingly permits a telephone under the person's control to be used by another to commit an offense under this section; or

(7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another."

Tex. Penal Code § 42.07(a).

8

. . . .

Q. Do you know [P.B.]?

A. I'd like to plead the Fifth.

Q. Did you have a relationship with [P.B.]?

A. I would like to plead the Fifth.

Q. During your relationship with [P.B.], did you videotape her having sex without her consent?

A. I would like to plead the Fifth.

Q. Did you send her a text message saying, I should delete the video I took of us having sex that she didn't know about?

A. I'd like to plead the Fifth.

Q. Did you text her that you were a sadist?

A. I'd like to plead the Fifth.

Q. On October 26th, 2017, did you text her multiple nude photos of herself and tell her you were going to post them online?

A. I'd like to plead the Fifth.

. . . .

Q. When she asked you not to text—post the photos of her, did you tell her you would if she had sex with you?

9

A. I would like to plead the Fifth.

Q. Did you text her, come over to my house and don't wear underwear?

A. I would like to plead the Fifth.

Q. You text her that—did she ever text you saying she was upset that you blackmailed her for sex?

A. I would like to plead the Fifth.

Q. Did she try to end your relationship on December 24th, 2017?

A. I would like to plead the Fifth.

Q. Did you message her, well, a lot of guys on craigslist want to see your video?

A. I would like to plead the Fifth.

Q. Did you then post a post on craigslist with her phone number saying she was looking for company?

A. I would like to plead the Fifth.

Q. And when she confronted you about that, did you text her, I did post it and I am sorry?

A. I'd like to plead the Fifth.

Q. Did she ask you to not contact her anymore on December 25th, 2017?

A. I would like to plead the Fifth.

10

Q. On January 2nd did you tell her that if she didn't answer you, you were going to start showing up at her work?

A. I'd like to plead the Fifth.

Q. Did she ask you again to leave her alone on January 4th, 2018?

A. I would like to plead the Fifth.

Q. Did you continue to contact her sending her messages, phone calls, texts after that on January 6th, January 9th, January 10th, January 13th, January 15th, January 16th, January 17th, January 18th?

A. I would like to plead the Fifth.

Q. Did you e-mail her on January 18th asking, why are you placing a restraining order on me?

A. I would like to plead the Fifth.

The State argues on appeal that the district court was required to infer from the above that the State's allegations against V.T. were true. In the State's view, "an innocent person would have simply denied" the State's allegations, and there was no reasonable basis for the district court to infer otherwise.

"The Fifth Amendment can be asserted in both civil and criminal trials 'wherever the answer might tend to subject to criminal responsibility him who gives it.'" *Texas Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995) (quoting *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924)). In a criminal case, a factfinder is not permitted to "draw an inference of guilt from a defendant's failure to testify about facts relevant to his case." *Baxter v. Palmigiano*, 425 U.S. 308, 317 (1976) (citing *Griffin v. California*, 380 U.S. 609 (1965)). On

11

the other hand, "because of the difference between the civil and criminal context, the United States Supreme Court has allowed juries in civil cases to make negative inferences based upon the assertion of the privilege." *Denton*, 897 S.W.2d at 760 (citing *Baxter*, 425 U.S. at 318). Stated another way, a factfinder in a civil case is "free to draw negative inferences from [a witness's] repeated invocations of the Fifth Amendment." *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007).

However, any negative inference that may be drawn from a witness's invocation of the Fifth Amendment is permissive, not mandatory. *Evans v. City of Chicago*, 513 F.3d 735, 741 (7th Cir. 2008). In other words, the inference "may be drawn, but it does not necessarily need to be drawn." *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993); *see also Newby v. Enron Corp.*, 762 F. Supp. 2d 942, 1017 (S.D. Tex. 2010) ("While an adverse inference may be drawn in a civil case when a party asserts his Fifth Amendment privilege, the trier of fact is not required to draw a negative inference."). Moreover, "[w]ithout some probative evidence as to the elements of the [plaintiff's] claims, any negative inference that might be drawn from [the defendant's] invocation of his privilege against self-incrimination cannot rise beyond mere suspicion." *Webb v. Maldonado*, 331 S.W.3d 879, 883 (Tex. App.—Dallas 2011, pet. denied); *see also Lozano v. Lozano*, 52 S.W.3d 141, 150–52 (Tex. 2001) (Phillips, C.J., concurring) (explaining limited evidentiary value of invocation of Fifth Amendment and observing that "suspicion and conjecture are not evidence").

Here, the only evidence that the State presented, other than V.T.'s invocation of the Fifth Amendment, was the testimony of Detective Coons, the scope of which was limited to her investigation into a single incident involving the offense of online impersonation. Coons testified that she believed, based on text messages that were allegedly sent from V.T. to P.B., that

V.T. had committed the offense of online impersonation and that she had submitted a case against V.T. to the district attorney's office for that offense. However, Coons provided no testimony as to whether any charges had been brought against V.T. Also, Coons testified only that the text messages contained statements by V.T. "talking about the relationship between them two," and "apologizing for sending the post and basically saying, I'm sorry, I shouldn't have done it." Coons provided no further testimony describing the content of the messages. To the extent that this evidence could be considered an admission by V.T. that he had committed an offense against P.B., it was the offense of online impersonation, which is not among the offenses for which a permanent protective order under Chapter 7A may be obtained. *See* Tex. Code Crim. Proc. art. 7A.01(a). Moreover, even if we were to assume that V.T.'s actions in the online-impersonation case constituted the offense of harassment, which could give rise to a protective order for stalking if the harassment had occurred "on more than one occasion," *see* Tex. Penal Code § 42.072(a)(1), Coons testified to only one such occasion. Thus, Coons provided no testimony tending to show that P.B. was a victim of stalking. Similarly, Coons provided no testimony tending to show that P.B. was a victim of sexual assault.

Given the absence of any probative evidence tending to show that P.B. was a victim of either stalking or sexual assault, any negative inference that could be drawn from V.T.'s invocation of his privilege against self-incrimination "cannot rise beyond mere suspicion." Accordingly, we cannot conclude that the district court abused its discretion in failing to infer from V.T.'s invocation of the Fifth Amendment that V.T. committed the offenses alleged by the State. *See Webb*, 331 S.W.3d at 883–84; *Matbon, Inc. v. Gries*, 288 S.W.3d 471, 489–90 (Tex. App.—Eastland 2009, no pet.); *Blake v. Dorado*, 211 S.W.3d 429, 433–34 (Tex. App.—El Paso 2006, no pet.); *see also Old Sec. Life Ins. Co. v. Continental Illinois Nat'l Bank &*

13

*Trust Co.*, 740 F.2d 1384, 1397–98 (7th Cir. 1984) (concluding that trial court was not required to draw negative inferences from invocation of Fifth Amendment when plaintiff's claims were not supported by other evidence).

We similarly cannot conclude that the evidence is legally or factually insufficient to support the district court's findings. The State had the burden of proof in this case, and its burden was to prove that P.B. was a victim of stalking or sexual assault. P.B. did not testify at the hearing, and her affidavit was not admitted into evidence. All that remained for the district court to consider was V.T.'s invocation of the Fifth Amendment and the testimony of Detective Coons. Because the district court was not required to infer that V.T. had committed the alleged offenses, and because Detective Coons provided no testimony tending to show that V.T. had committed anything other than the offense of online impersonation, we cannot conclude that the State established, as a matter of law, that P.B. was entitled to a permanent protective order against V.T. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Garcia*, 314 S.W.3d at 546. For the same reasons, we cannot conclude that the district court's failure to find that P.B. was entitled to a protective order is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Garcia*, 314 S.W.3d at 546.

## CONCLUSION

We overrule the State's issues on appeal and affirm the judgment of the district court.

14

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   May 16, 2019