Bobby R. DOSS, Appellant,

v.

HOMECOMINGS FINANCIAL
NETWORK, INC., et al.,
Appellees.

No. 13–05–1399–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Nov. 2, 2006.

Rehearing Overruled Jan. 18, 2007.

Bob J. Spann, Law Office of Bob J. Spann, Corpus Christi, for appellant.

Nina Tran, James H. Leeland, Hoover, Slovacek, LLP, Houston, for appellees.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

## OPINION

Opinion by Chief Justice VALDEZ.

Homecomings Financial Network, Inc. and Bankers Trust Company as Trustee (collectively referred to as "Homecomings"), appellees, brought several fraud claims and a declaratory judgment action against Bobby R. Doss, appellant, for his actions after a misapplication of mortgage funds.[1] Bobby responded with a general denial and a crossaction. Homecomings filed a motion for interlocutory summary judgment. The district court granted Homecomings's motion for interlocutory summary judgment against Doss and in a final judgment awarded Homecomings monetary damages, declaratory relief, and attorney's fees. Bobby appeals the final judgment and raises six issues, which can be narrowed and addressed in three. Bobby contends that the trial court erred in (1) granting summary judgment on Homecomings's claims, (2) awarding attorney's fees to Homecomings, and (3) dismissing his cross action. We affirm in part, reverse in part, and remand in part. Tex.R.App. P. 43.2, 43.3.

## I. BACKGROUND

### A. Factual Background

In October 1997, Bobby and Charlotte Doss, then husband and wife, purchased two pieces of real property in Refugio County, Texas. The first piece of property was financed by a note ("Note 1") for $38,000 issued by Homecomings and secured by a vendor's lien and deed of trust upon the property.[2] The second piece of

---

1. For easy reference, Bobby R. Doss will be referred to as Bobby and Charlotte Doss will be referred to as Charlotte.

2. Note 1 was assigned to Bankers Trust Company, who is the legal owner and holder of the note.

property was financed by a note ("Note 2") for $51,000 issued by Homecomings and secured by a vendor's lien and deed of trust upon the property.[3]

On February 28, 2000, Bobby and Charlotte divorced. According to the divorce decree, Bobby was awarded the property secured by Note 1 as his separate property and Charlotte was awarded the property secured by Note 2 as her separate property. Bobby and Charlotte were to assume the debt for the property each received in the divorce decree.

In October 2002, Charlotte arranged with Bank of America to refinance the property she received in the divorce decree, which was financed through Homecomings by Note 2. When Homecomings received a disbursement check from Bank of America on behalf of Charlotte for the amount of $36,449.90, it credited the funds to Note 1 instead of Note 2. Homecomings claims it was unaware of Bobby and Charlotte's divorce, but a title report shows a deed from Bobby granting the property in question to Charlotte was recorded on May 3, 2000. Thus, Homecomings mistakenly paid off Note 1, which Bobby assumed according to the divorce decree, and issued Bobby a release of lien and an escrow account refund of nearly two thousand dollars. The release of lien was filed with the county clerk on November 8, 2002, although it is not clear who filed the release of lien.

Homecomings contacted Bobby after it realized the mistake. It demanded that Bobby (1) agree to set aside and render null and void the release of lien, (2) revive the lien under the deed financed by Note 1, (3) refund $1,947.17 sent to Bobby from the escrow account, and (4) give his authorization to apply the misapplied funds to Note 2 for the benefit of Charlotte. Bobby refused to comply with the demands. Homecomings filed suit against Bobby and Charlotte on December 9, 2002.

### B. Procedural Background

■■■ Homecomings's petition against Bobby alleges the following claims: (1) unjust enrichment, (2) money had and received, (3) breach of express contract, and (4) breach of implied contract.[4] Included in Homecomings's petition is a request for declaratory judgment. In its declaratory judgment request, Homecomings asked the trial court to undo the ramifications of its misapplication of Charlotte's funds. On May 4, 2004, Bobby filed his first amended answer and claimed that the lawsuit was unjust. Bobby's answer included a cross-action against Homecomings for the adverse effect the dispute had on his credit rating. On June 17, 2004, Homecomings moved for an interlocutory summary judgment, which was granted on November 22, 2004. A nonsuit without prejudice was filed as to Charlotte, and a final judgment was signed on December 27, 2004.

---

3. Homecomings is the legal owner and holder of Note 2.

4. Unjust enrichment, however, is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay. *City of Corpus Christi v. Heldenfels Bros.*, 802 S.W.2d 35, 40 (Tex.App.-Corpus Christi 1990), *aff'd*, 832 S.W.2d 39 (Tex.1992). The doctrine applies the principles of restitu-

tion to disputes where there is no actual contract, based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution. *Oxford Fin. Cos. v. Velez*, 807 S.W.2d 460, 465 (Tex.App.-Austin 1991, writ denied). Thus, an action for money had and received is a doctrine applied to prevent unjust enrichment. *London v. London*, 192 S.W.3d 6, 13 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Thus, there are really only three causes of action in the instant case.

The final judgment orders Homecomings to recover $37,618.49, plus pre- and postjudgment interest from Bobby, declares void the release of lien given to Bobby and filed with the county clerk, revives Note 1, authorizes Homecomings to apply $35,671.32 that was mistakenly paid on Note 1 to Note 2, and awards Homecomings $15,000 in attorney's fees, with interest, plus court costs. It does not mention Bobby's cross-action.

## II. DISCUSSION

### A. Finality of Judgment

■■ By his third issue, Bobby contends that the trial court erred by not addressing his cross-action against Homecomings in the final judgment. This issue can best be understood as a challenge to the judgment's finality. Finality "must be resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties." *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 203 (Tex.2001) (quoting 5 Ray W. McDonald, Texas Civil Practice 27:4, at 4 (John S. Covell, ed., 1992 ed.)). The summary judgment motion was interlocutory only in that it pertained to claims against Bobby and did not attempt to resolve any potential claims against Charlotte. We note that Homecomings did not raise any claims against Charlotte in its petition even though she was a named defendant and the only relief requested from Charlotte was declaratory in nature; a nonsuit with prejudice as to Charlotte was filed shortly before the final judgment was entered.

We note that a final judgment was entered after the interlocutory summary judgment was signed. The final judgment states that "[a]ll parties and issues are finally disposed of by this Judgment." Assuming Bobby properly pleaded a cross-action, the final judgment appears to deny it. We construe the judgment in the instant to be final and appealable because it unequivocally expresses an intent to dispose of the case. *See Lehmann*, 39 S.W.3d at 206. Bobby's third issue is overruled.

### B. Standard of Review

Bobby's first issue contends that the trial court should not have granted summary judgment on any of Homecomings's claims. Summary judgment is a question of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). Thus, we review a trial court's summary judgment decisions *de novo*. *Id.* at 215.

The standard of review for a traditional summary judgment motion is threefold: (1) the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. Tex.R. Civ. P. 166a(c); *Pustejovsky v. Rapid–Am. Corp.*, 35 S.W.3d 643, 645–46 (Tex.2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ In the instant case, the trial court did not specify the ground relied upon for its ruling. Therefore, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005).

### C. Money Had and Received Claim

■ Homecomings's claim for money had and received is an equitable action

that may be maintained to prevent unjust enrichment when the defendant obtains money, which in equity and good conscience belongs to the plaintiff. *Orgain v. Butler*, 478 S.W.2d 610, 613 (Tex.Civ.App.-Austin 1972, no writ)(citing *Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686, 687 (1951)). A cause of action for money had and received is not based on wrongdoing but instead, "looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex.App.-El Paso 1997, no writ) (citing *Greer v. White Oak State Bank*, 673 S.W.2d 326 (Tex. App.-Texarkana 1984, no writ)). It is essentially an equitable doctrine applied to prevent unjust enrichment. *Hunt v. Baldwin*, 68 S.W.3d 117, 132 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

The summary judgment evidence includes a divorce decree assigning Note 1 and the property financed by Note 1 to Bobby and assigning Note 2 and the property financed by Note 2 to Charlotte. Also in evidence are Bank of America loan papers completed by Charlotte so that she could refinance Note 2 and copies of the check stubs used to refinance Note 2. Another piece of summary judgment evidence is the affidavit of Kelli Kysela, a custodian of records for Homecomings, which states that the check from Bank of America was applied to Note 1 instead of Note 2. A release of lien evidencing the misapplication was filed with the county clerk. Kysela states that a demand was made on Bobby to remedy the mistake, but no action was taken.

 Bobby did not marshal any evidence to challenge the summary judgment motion on any of the causes of action advanced. Before the trial court, Bobby contended that Homecomings was precluded from seeking an equitable remedy because it made a mistake in applying Charlotte's funds to the wrong note. However, wrongdoing is not an element in a claim for money had and received. *Smith*, 946 S.W.2d at 164. Moreover, there is no evidence that Bobby materially changed his position in reliance on the misapplication of funds, the release of lien, or the escrow account refund. *Cf. Bryan v. Citizens Nat'l Bank*, 628 S.W.2d 761, 763 (Tex.1982) ("Generally, a party who pays funds under a mistake of fact may recover restitution of those funds if the party to whom payment was made has not materially changed his position in reliance thereon.").

The record conclusively establishes that Homecomings received funds intended for Charlotte's note, mistakenly applied the funds to Bobby's note, and that the funds in equity and good conscience belong to Homecomings so that they can be rightfully applied to Charlotte's note. Therefore, there is no disputed issue of material fact with regard to Homecomings's money had and received claim. Thus the trial court could have granted Homecomings's summary judgment based upon a claim for money had and received. Bobby's first point of error is overruled.

## D. Claims Utilizing the Uniform Declaratory Judgment Act

 Bobby argues by his second issue that the trial court should not have awarded attorney's fees because there was a controverting affidavit questioning the reasonableness and necessity of the fees. Bobby's second issue calls into question a more fundamental issue. Attorney's fees are recoverable only when provided for by statute or by the parties' agreement. *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex.1992). We know that reasonable and necessary attorney's fees may be awarded in any proceeding utilizing the Uniform Declaratory Judg-

ment Act (UDJA) if they are equitable and just, and that reasonable attorney's fees can be recovered on oral or written contract claims. Tex. Civ. Prac. & Rem.Code Ann. §§ 37.009, 38.001(8) (Vernon 1997). However, neither Homecomings's pleadings nor the final judgment delineate which causes of action were the basis for the award of attorney's fees.

Because of the parties' awkward pleading practice, our first task in deciding the attorney's fee question is to categorize the causes of action so that we can determine the jurisdictional basis for an award of attorney's fees. *Cf. Kadish v. Pennington Assocs., L.P.,* 948 S.W.2d 301, 304 (Tex. App.-Houston [1st Dist.] 1995, no writ) (holding that to establish jurisdiction under the UDJA, a party must plead the existence of an "underlying controversy" within the scope of section 37.004 of the civil practice and remedies code). A cause of action that would support the award of attorney's fees must be rooted in the UDJA or section 38.001(8) of the civil practice and remedies code; a cause of action that would not support the award of attorney's fees would not be rooted in the two statutes.

■■■■ The UDJA is a procedural device for deciding cases already within a court's subject matter jurisdiction. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011 (Vernon 1997); *State v. Morales,* 869 S.W.2d 941, 947 (Tex.1994); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993). A litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit. *Morales,* 869 S.W.2d at 947. The pertinent statute reads:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a)(emphasis added).

At first blush all of Homecomings's causes of action appear to trigger the UDJA's jurisdiction because of the presence of notes and deeds. The instruments at the heart of Homecomings's claims are Note 1, the deed of trust secured by Note 1, and the release of lien. Note 1 is a promissory note, which is a written contract, between Bobby and Charlotte and Homecomings. The mistakenly issued release of lien issued by Homecomings cancelled the deed of trust secured by Note 1.

However, Homecomings's allegation of unjust enrichment and claims for money had and received and implied contract are equitable claims that tangentially deal with the notes and deeds in the instant case. The instruments are evidence of Bobby's alleged wrongdoing and unjust enrichment, but Homecomings's equitable claims do not raise questions of "construction or validity arising under the instruments." *See id.* By all accounts the instruments in the record are valid; the benefit that Bobby received from the release of lien is the central issue. Therefore, the equitable claims cannot utilize the UDJA. *Morales,* 869 S.W.2d at 947.

Of Homecomings's three causes of actions, only one-breach of express contract-can be resolved using the UDJA. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001 et. seq. Our analysis of the attorney's fee award moves to the breach of contract claim, because that is the only pleaded

claim that could sustain an award of attorney's fees. *See id.* §§ 37.009, 38.001(8).

### E. Breach of Contract

 Homecomings's summary judgment motion and its supporting affidavit fail to outline the elements of a breach of contract claim, summarily assert Bobby's breach of Note 1 (the express contract in question), and state, without justification, that the damages stemming from Bobby's alleged breach are the misapplied funds and the erroneously refunded escrow account. The elements for a breach of express contract claim are: (1) a valid contract, (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach. *Keszler v. Mem'l Med. Ctr. of E. Tex.*, 105 S.W.3d 122, 128 (Tex. App.–Corpus Christi 2003, no pet.).

At the trial court, Bobby contested the breach and injury elements of the breach of contract claim. *See* Tex.R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). In his first amended answer, Bobby claims he attempted to pay Homecomings the monthly mortgage payment, but his attempts to pay were refused because at the time Homecomings's records showed that Note 1 was paid.

Assuming that the first two elements of a breach of contract claim are satisfied, the record before us does not establish as a matter of law the last two elements. With regard to the breach of contract element, Homecomings implicitly argues that since the payment provisions of Note 1 begin with the singular pronoun "I," as in "I promise to pay," Bobby breached those provisions by allowing Note 1 to be paid off by the financing arranged by Charlotte

through Bank of America. In essence, Homecomings asks that its misapplication of the Bank America check be construed as a breach on Bobby's part. However, Bobby's first amended answer asserts that he attempted to pay, thereby raising a fact issue concerning the breach element.

 Additionally, Homecomings fails to show how Bobby's alleged breach caused an injury. *See Southwell v. Univ. of the Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex.App.-San Antonio 1988, writ denied)(stating that to prove an action for breach of contract, the plaintiff must establish the defendant's breach caused injury). The normal measure of damages in a breach of contract case is the benefit-of-the-bargain measure. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 760 (Tex.App.-El Paso 2000, no pet.). This measure seeks to restore the injured party to the economic position it would have been in had the contract been performed. The release of lien coupled with Bobby's assertion that a Homecomings employee told him Note 1 was paid is evidence that Homecomings received the benefit-of-the-bargain, a satisfied note.

Viewing the evidence in the light most favorable to Bobby, *Keszler*, 105 S.W.3d at 128, we conclude that there is more than a scintilla of evidence to raise a fact issue with regard to the breach and injury elements of Homecomings's breach of contract claim. Therefore, the trial court could not have granted summary judgment based on a breach of express contract claim.

### F. Attorney's Fees

The breach of contract claim was the only underlying controversy in Homecomings's summary judgment motion that could have supported an award for attorney's fees. Tex. Civ. Prac. & Rem.Code Ann. §§ 37.009, 38.001(8). The trial court

should not have awarded attorney's fees because it could not have granted summary judgment on an underlying controversy within the scope of sections 37.004 or 38.001(8) of the civil practice and remedies code. *Kadish*, 948 S.W.2d at 304. Bobby's second issue is sustained.

### III. CONCLUSION

The trial court's judgment against Bobby for $37,618.49 is affirmed based upon Homecoming's claim for money had and received. Tex.R.App. P. 43.2(a). The remaining aspects of the trial court's judgment are reversed and the case is remanded for further proceedings consistent with this opinion. *Id.* at rule 43.2(d).