

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHAEL NEVAREZ AND THE LAW OFFICES OF MICHAEL R. NEVAREZ, A PROFESSIONAL CORPORATION, D/B/A NEVAREZ LAW FIRM, P.C., | § § § § | No. 08-19-00120-CV |
| | | Appeal from the |
| Appellants, | § | 41st District Court |
| v. | § | of El Paso County, Texas |
| USAA FEDERAL SAVINGS BANK, | § | (TC# 2018-DCV-1121) |
| Appellee. | § | |

## O P I N I O N

Appellants Michael Nevarez ("Nevarez") and The Law Offices of Michael R. Nevarez, a Professional Corporation, d/b/a Nevarez Law Firm, P.C. (the "Firm") (collectively, "Appellants"), appeal the trial court's summary judgment in favor of Appellee USAA Federal Savings Bank ("USAA FSB"). In five issues, Nevarez and the Firm argue that USAA FSB failed to conclusively establish as a matter of law it was entitled to summary judgment on its claims of money had and received. Finding no error, we affirm.

### I.  BACKGROUND

#### A.  Factual Background

In May 2017, a USAA FSB loan originator and prospective home buyers, Ryan Dumire

and Cristal Rose, completed a universal residential loan application for the purchase of an El Paso home. On June 6, 2017, attorney Michael Nevarez sent a letter to USAA FSB describing that he had been retained to act as "Escrow Agent," in connection with the closing of the purchase of 14370 North Cave Drive, El Paso, Texas, by buyers Dumire and Rose from sellers James and Leigh Hoffman. The escrow agent designation more specifically described the agent as "Michael R. Nevarez, Esq., Attorney at Law, State of Texas Bar No. 14933400." Paragraph two of the letter further offered closing protection terms to USAA FSB, provided it timely fund the entire amount of the loan that had been applied for and approved for Buyer. The letter next clarifies that "[t]he term, 'Escrow Agent,' shall include the direct operations of the Firm."

Nine numbered paragraphs follow in which the letter further describes the "protection with respect to the closing of your loan transaction . . . ." Paragraph one provides that "[t]he Firm" would disburse the funded loan amount in accordance with the closing statement and that disbursements would not deviate from that statement unless USAA FSB gave advance written approval. Paragraph two assures that the Firm will replace the settlement funds that are lost after receipt of such funds by such Escrow Agent as a direct, proximate result of the fraud or dishonesty of such Escrow Agent. In closing, the letter is signed by Nevarez as president of the Nevarez Law Firm, PC. The letter itself is written on letterhead of "The Nevarez Law Firm, PC." Enclosed with the letter was a closing disclosure form identifying the settlement agent as Lone Star Title.

On June 28, 2017, USAA FSB emailed one of the home buyers stating that the title company had a variety of time slots available for the buyer's closing. In response, the home buyer emailed back that he had scheduled to close with his lawyer, and the closing would take place at his lawyer's office. The following day, on June 29, 2017, USAA FSB wired the sum of

$174,281.80 to a JPMorgan Chase Bank account described as belonging to "Michael R. Nevarez Law [F]irm PC." Despite such wire transfer, no closing took place on that day; instead, on June 30, 2017, Nevarez sent an email to two persons at Lone Star Title and USAA FSB, respectively, informing each that his unnamed client had specific objections to the proposed deed which was provided with the closing documents. The escrow officer at Lone Star Title quickly responded that no error was made regarding the type of deed and none of the documents would be revised. By that evening, USAA FSB emailed Nevarez at 5:05 p.m. to notify him that the sum of $174,281.80 had been erroneously wired to him and requested that he respond as soon as possible for return wire instructions. The title company also informed both USAA FSB's contractor and Nevarez that its underwriter had issues with the closing documents and there would need to be a "redo" of both the buyers' and the sellers' closings.

Email correspondence indicates that USAA FSB remained in communication with the Firm during the following week. Being informed that Nevarez was out of his office, USAA FSB had been unable to yet retrieve its money. On July 7, 2017, USAA FSB processed another wire of the loan proceeds to Lone Star Title so that the buyers could close on their home purchase. Thereafter, no party requested the assistance of either Nevarez or the Firm in connection with the transaction.[1]

On July 21, 2017, USAA FSB sent a follow-up email to Nevarez in which it again requested return of the erroneously sent wire. On August 2, Nevarez emailed back a one line response stating, "Sorry, I had to go out of town again. Where would you like me to mail the check to?" Despite this response, the next series of correspondence, which begins on October 31, shows that USAA

---

[1] At one point, Nevarez sent an email informing representatives of the title company and USAA FSB that his client (the Sellers) objected to the Warranty Deed with Vendor's Lien which had been included in the closing package. The title company responded that it would only accept a signed Warranty Deed with Vendor's Lien.

FSB still had not received its money back, and on that day, it sent the following email to Nevarez:

> Per our phone conversation we will expect the returned wire to be in the amount of 174206.80 ([ ]original wire was 174,281.80 and we are agreeing to the 75.00 fees being withheld). I have attached our return wiring instructions. Please respond once you have sent the wire with the Federal reference number.

And on November 2, USAA FSB sent yet another email to request the return of its money:

> Per our phone conversation on October 31 you advise that you would be returning the wire to USAA on the above referenced file. It is now 3 days later and we have still not received the wire. You have held our funds 174,281.80 now for 90 days. Please advise when the wire will be returned.

Nevarez responded to the November 2 email that same day with the following email: "3 days later? We just spoke 2 days ago. My bookkeeper has been out all week. We'll send you the check when she comes back next week." Despite this assurance, several more weeks passed in mid-November during which USAA FSB sent two more follow-up emails requesting return of its money. And, in December, it sent a demand letter from its legal counsel formally requesting a wire payment of $174,206.80. On March 27, 2018, USAA FSB filed suit against Nevarez and the Firm seeking to recover the wired funds.

### B. Procedural Background

In its original petition, USAA FSB alleged a claim for money had and received against both the Firm and Nevarez with a request that both named parties be held jointly and severally liable for holding money that belongs to USAA FSB in equity and good conscience. Appellants jointly filed an answer generally denying the allegations and asserting various affirmative defenses, which are not at issue here. Thereafter, USAA FSB filed a motion for summary judgment against both Appellants on its claims of money had and received. Although Appellants responded with their contentions that USAA FSB had failed to prove its claim against either party, neither

Nevarez nor the Firm filed a motion for summary judgment of its own. Nevarez attested by affidavit that he acted only as an "agent, representative and as Counsel" for the Firm in his dealings with USAA FSB. He further attested that neither he nor the Firm promised to return the money to USAA FSB but instead had "promised to look into the matter further[] and return the funds if appropriate." He further avers there was no contract with either USAA FSB or Lone Star; thus, he "concluded that the wire transaction was tantamount to a gift, erroneous or otherwise, and that USAA's remedies lie solely against LONE STAR." In its reply, USAA FSB contended that Nevarez should be held individually liable on the claim for money had and received because "his actual status is one of joint tortfeasor -- he was the person who was supposed to act as Escrow Agent, not just his firm."

After USAA FSB filed its reply, Appellants filed a motion to dismiss under Texas Rule of Civil Procedure 91a. *See* TEX. R. CIV. P. 91a ("Dismissal of Baseless Causes of Action"). In this motion, Appellants argued that Nevarez was shielded from personal liability under the affirmative defense in Texas Business Organizations Code section 21.223. *See* TEX. BUS. ORGS. CODE ANN. § 21.223 ("Limitation of Liability for Obligations").

By written order, the trial court granted USAA FSB's motion for summary judgment holding the Firm and Nevarez jointly liable for restitution in the amount of $174,206.80, along with pre- and post-judgment interest, attorney's fees, and court costs. The trial court also denied Nevarez's motion to dismiss based on Nevarez having used the corporation as an "alter-ego" for his own personal use when claiming that the money delivered to and received by both he and the corporate entity was "tantamount to a gift." On March 25, 2019, the trial court entered a final judgment in favor of USAA FSB and against Michael Nevarez and the Law Offices of Michael

R. Nevarez, P.C., d/b/a Nevarez Law Firm. Although the judgment recited the trial court's grant of summary judgment, it did not recite the court's denial of Appellants' motion to dismiss nor did it award any attorney's fees. The final judgment expressly stated that all relief not stated therein was denied. From this final judgment, Appellants filed their notice of appeal.

## II. ISSUES ON APPEAL

In five issues on appeal, Appellants argue that the trial court erred in granting summary judgment. Although not entirely congruent with their pleadings in the trial court, Appellants argue that the trial court erred for the following reasons: (1) USAA FSB failed to prove that Nevarez personally had or received the money at issue; (2) USAA FSB failed to prove that Nevarez was liable under a theory that he used the Firm as an alter-ego for his personal benefit; (3) USAA FSB failed to prove that Nevarez was liable under a theory that he perpetrated actual fraud for his personal benefit; (4) Nevarez conclusively proved the affirmative defense to individual liability under section 21.223 of the Texas Business Organizations Code; and (5) USAA FSB failed to prove that it was entitled to equitable relief against either Nevarez or the Firm on its claim for money had and received where USAA FSB's inadvertent wire of funds to an incorrect party was based on USAA FSB's own negligent unilateral mistake.

In response, and likewise not entirely congruent with its pleadings, USAA FSB argues that the trial court's grant of summary judgment on its claim for money had and received was proper because: (1) the Firm was liable where it refused to return money that in equity and good conscience belonged to USAA FSB; and (2) Nevarez was liable where he breached fiduciary duties owed to USAA FSB as an escrow agent, where he directed tortious actions of the Firm in refusing to return USAA FSB's money, and where he failed to conclusively establish his affirmative

defense under Texas Business Organizations Code section 21.223.

Importantly, Appellants do not dispute in their briefing to this Court that the Firm received the money wired by USAA FSB. Instead, their primary factual contention is that USAA FSB failed to prove that Nevarez ever had or received those funds. With this underlying premise, we address Appellants' issues out of turn by resolving Appellants' fifth issue contesting the Firm's liability before turning to Appellants' first through fourth issues contesting Nevarez's individual liability.

### III.  DISCUSSION

#### A.  Standard of Review

A trial court's granting of summary judgment is reviewed de novo.  *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). A party moving for traditional summary judgment has the burden to prove that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018). The movant must establish its right to summary judgment on the grounds expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 815 (Tex. 2005).

If the movant establishes its right to judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact precluding summary judgment. *Ballard v. Arch Ins. Co.*, 478 S.W.3d 950, 953 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Hovorka v. Cmty. Health Sys., Inc.*, 262 S.W.3d 503, 508 (Tex. App.—El Paso 2008, no

7

pet.). To determine if a fact issue exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We review summary judgment evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015).

When the order granting summary judgment does not specify the grounds relied on for the ruling, we affirm the summary judgment if any of the theories advanced are meritorious. *Thrower v. State*, No. 03-18-00800-CV, 2019 WL 7342248, at *1 (Tex. App.—Austin Dec. 31, 2019, no pet.) (mem. op.). However, we cannot "'read between the lines' or infer from the pleadings any grounds for granting the summary judgment other than those grounds expressly set forth before the trial court." *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013). New grounds asserted in a movant's summary judgment reply will not be considered on appeal. *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 467 (Tex. App.—Fort Worth 2020, no pet.).

## B. "Money Had and Received"

A claim for "money had and received" is equitable in nature. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015). "Money had and received is a category of general assumpsit to restore money where equity and good conscience require refund." *Id.* (quoting *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.)). This cause of action is not based on any misconduct but instead looks only to whether one received money that rightfully belonged to another. *Id.* The cause of action for money

8

had and received is applied to keep the defendant from being unjustly enriched. *Id*. In order to prove a claim under this cause of action, plaintiff must prove defendant holds money that in good conscience and equity belongs to plaintiff. *Id*.; *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ); *see also Burrus v. Reyes*, 516 S.W.3d 170, 197 (Tex. App. —El Paso 2017, pet. denied) (stating the money had and received cause of action is aimed at abstract justice rather than restricted by technical rules and formalities). A "defendant may present any facts and raise any defenses that would deny the claimant's right or show that in equity and good conscience the claimant should not recover." *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205 (Tex. 2007).

## C. Analysis

### 1. Summary Judgment Holding Nevarez and the Firm Liable was not Error

As previously noted, there is no factual dispute that the Firm held USAA FSB's mistakenly wired funds of $174,281.80, which were intended as loan proceeds to fund a home purchase in El Paso. As summary judgment evidence, USAA FSB provided the closing protection letter and closing statement which evidenced the intention of Nevarez and his Firm to hold the money as an escrow agent and to disburse payments only to Lone Star Title or the home sellers unless USAA FSB gave advance written approval to do otherwise. The Firm had no authority to hold onto USAA FSB's money, especially once the sale of the home was postponed and Appellants' assistance in closing the transaction was no longer requested.

USAA FSB also presented evidence that the Firm never returned USAA FSB's money even after Nevarez represented to USAA FSB that Appellants would do so. Within one day of the erroneous wire, USAA FSB discovered its mistake, and on June 30, 2017, USAA FSB began

making numerous, unfruitful requests to Nevarez to return the money. USAA FSB's requests were made over the course of several months during which Appellants offered no explanation for failing to return the money. Appellants' failure was made even more striking after Nevarez twice emailed USAA FSB with unequivocal declarations that he would return the money. In August 2017, Nevarez wrote by email, "Sorry, I had to go out of town again. Where would you like me to mail the check to?" Three months later in November, Nevarez wrote by email, "We just spoke 2 days ago. My bookkeeper has been out all week. We'll send you the check when she comes back next week." In addition, an October email from USAA FSB reflected that Nevarez represented during a phone conversation that he would ensure the return of USAA FSB's money. Nevarez attested by affidavit in his response to USAA FSB's summary judgment filings that Appellants never promised to return the money. However, this attestation is clearly shown to be false by his own words in emails to USAA FSB. Nevarez does not contest the contents of the emails and therefore, his attestation is not entitled to any probative value, even under a summary judgment standard of review. *See Goodyear Tire*, 236 S.W.3d at 755 (instructing that we "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" when determining whether a fact issue exists). But more relevant to the money had and received cause of action, Nevarez admitted in briefing that the record proved the payment of money in question was erroneous, not based on any obligation. Finally, neither Nevarez nor anyone from the Firm returned the money or offered any lawful basis for not doing so prior to USAA FSB filing its lawsuit. Nevarez simply asserted without proof that USAA FSB had intended to make a gift.

Based on these circumstances, we hold that USAA FSB proved there was no genuine issue of material fact that the Firm held money which in equity and good conscience belonged to USAA

10

FSB and thereby proved its claim for money had and received where: (1) the Firm does not dispute it held the money; (2) USAA FSB conclusively proved its wire of the money to the Firm was mistakenly done; and (3) USAA FSB conclusively proved the Firm had completed no service or act, nor had any alternative legal basis, on which it could assert some equitable claim to USAA FSB's money. *See Plains Expl. & Prod.*, 473 S.W.3d at 302 n.4; *Burrus*, 516 S.W.3d at 197; *see also Doss v. Homecoming Financial Network, Inc.*, 210 S.W.3d 706, 711 (Tex. App.—Corpus Christi 2006, pet. denied) (holding that the record established Appellees' right to summary judgment on their claim for money had and received against Appellant where: (1) Appellees received funds intended to pay a loan note for the home of Appellant's ex-wife; (2) Appellees instead mistakenly applied the funds to Appellant's separate loan note for his own property, even though a recorded deed in the public records should have alerted Appellees to their mistake; and (3) the funds in equity and good conscience belonged to Appellees so that the funds could be properly applied to the ex-wife's note); *Progressive Transp., LLC v. Republic Nat'l Indus. Of Tex., LP*, No. 06-14-00030-CV, 2015 WL 500514, at *10-11 (Tex. App.—Texarkana Feb. 5, 2015, no pet.) (mem. op.) (holding that the trial court's grant of summary judgment in favor of Appellee on its claim for money had and received against Appellant was proper where: (1) Appellant admitted that it had received payment for the invoices at issue and that it had no assignment from anyone to collect on the invoices; (2) Appellee conclusively established that no work was done to earn payment on the invoices; and (3) consequently, payment on the invoices "did not belong to" Appellant). Our holding is in accord with the general rule that a party who pays under a mistake of fact may recover restitution of those funds on a claim for money had and received, and Appellants have not pleaded or proved the material-change-or-reliance exception to this rule. *See*

11

*Doss*, 210 S.W.3d at 711 (citing *Bryan v. Citizens Nat'l Bank*, 628 S.W.2d 761, 763 (Tex. 1982));

*see also Lyman D. Robinson Family Ltd. P'ship v. McWilliams & Thompson, PLLC*, 143 S.W.3d

518, 520 (Tex. App.—Dallas 2004, pet. denied).

We reject Appellants' two defensive theories presented under a money had and received

claim. First, Appellants contend that "payment by unilateral mistake bars a claim for money had

and received" and cite a line of cases that, at first glance, appear to support their proposition.

However, as pointed out by USAA FSB, there is an essential, distinguishing feature of Appellants'

cited cases to the issue at hand. Appellants' cited cases all involve parties seeking equitable relief

where they paid money with full knowledge of the facts surrounding the transaction but later

discovered their payments were for legally invalid claims. *See Pac. Molasses Co. v. Graves*, 451

S.W.2d 294, 297 (Tex. App.—San Antonio 1970, writ ref'd n.r.e.) (addressing a situation where a

purchaser of molasses that had expressly authorized its bookkeeper to pay for molasses shipments

sought return of money paid out to the seller on the basis that the payments should have been made

by third parties); *Emp'r Cas. Co. v. Universal Underwriters Ins. Co.*, 404 S.W.2d 954, 955 (Tex.

App.—Amarillo 1966, no writ) (addressing a situation where an excess insurance carrier sought

reimbursement from the primary carrier for funds paid to a third party who was injured by insured

and was entitled to be paid damages); *Sellman v. Am. Nat'l Ins. Co.*, 281 S.W.2d 150, 154 (Tex.

App.—Texarkana 1955, writ dism'd) (addressing a situation where a life insurance company

sought repayment of funds paid on a policy to a spouse of the insured who the company mistakenly

believed was dead); *see also R.G. McClung Cotton Co. v. Cotton Concentration Co.*, 479 S.W.2d

733, 743 (Tex. App.—Dallas 1972, writ ref'd n.r.e.) (addressing an inapposite situation where the

plaintiff did not claim the payments at issue were made under mistake of fact and additionally

12

observing that the rule against recovery of voluntary payments is based on the rationale that "a party who *pays a claim* is deemed to have made his own decision that it is justly due. If he thinks otherwise, he should resist.") (Emphasis added.) Using the same reasoning we have employed to distinguish these cases, our sister court in *Lyman* addressed and rejected an identical argument based on nearly the same line of cases cited by Appellants here. *See Lyman D. Robinson Family Ltd. P'ship*, 143 S.W.3d at 521 (rejecting Appellants' unilateral-mistake defense premised on the rationale of *R.G. McClung Cotton Co.*, *Employers Casualty Co.*, and *Sellman* because "the authorities cited by appellants involved money paid voluntarily with full knowledge of all facts, not money paid by mistake as in the case before us"). Appellants have no analogous claim upon which they could assert their right to USAA FSB's mistaken payment. Thus, we reject Appellants' unilateral-mistake defense as inapplicable to this case.

Second, Appellants contend that "as between two innocent parties, the party that must suffer the loss is the one that mistakenly created the situation and was in the best position to have avoided it." Appellants' cited cases are united by another distinguishing feature in that the party against whom restitution is sought either provided services for which payment was earned and therefore, cannot be unjustly enriched. *See Holden Bus. Forms Co. v. Columbia Med. Ctr. Of Arlington Subsidiary, L.P.*, 83 S.W.3d 274, 278 (Tex. App.—Fort Worth 2002, no pet.) (holding that a company offering medical insurance to its employees was not entitled to reimbursement from a hospital for medical payments arising from an employee's injuries sustained in a collision for which insurance coverage should not have applied due to the employee's intoxication where: (1) the hospital treated the employees' injuries and thereafter submitted bills to the company pursuant to the employee's medical insurance; (2) the company was in a better position than the

hospital to know of the exclusions in its own policy; and (3) the hospital made no misrepresentations to the company to induce the payments and had no knowledge of the exclusion); *Lincoln Nat'l Life Ins. Co. v. Brown Sch., Inc*., 757 S.W.2d 411, 415 (Tex. App.—Houston [14th Dist.] 1988, no writ) (holding that an insurance company was not entitled to restitution for overpayments made to a hospital for medical treatment tendered to the company's insured when there was no unjust enrichment); *see also Lincoln Nat'l Life Ins. Co. v. Rittman*, 790 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1990, no writ) (holding that it was not "equitable under the circumstances" for an insurance company to recover restitution from its insured for overpayments made to a hospital that tendered medical treatment to the insured where overpayment was insurance company's own error and insured accepted as a benefit of employment). Here, Appellants are not similarly innocent parties because they will, in fact, be unjustly enriched if allowed to keep the money that in good conscience belongs to USAA FSB. Thus, we reject Appellants' innocent-parties defense as inapplicable to our case as well.

Having found that USAA FSB proved there was no genuine issue of material fact on its claim for money had and received against the Firm and that Appellants' asserted defenses do not apply here, we hold the trial court did not err in granting summary judgment against the Firm on USAA FSB's claim for money had and received. *See* TEX. R. CIV. P. 166a(c); *Lightning Oil*, 520 S.W.3d at 45. We therefore overrule Appellants' fifth issue presented for review.

### 2. Summary Judgment Holding Nevarez Individually Liable was not Error

As an individual, Nevarez presents several alternative arguments purporting to distinguish his conduct from that of the Nevarez Law Firm. Principally he contends there was no evidentiary proof that he "'had' in fact 'received' the money at issue." Alternatively, he contends there was no

14

proof that the Nevarez Law Firm was his "alter-ego," that he used the Firm for his personal benefit, or that he committed actual or constructive fraud. Because Nevarez individually acted as an escrow agent when he initially sent his letter of representation and later directed the conduct of the Firm regarding its receipt of the funds, we hold that the evidence conclusively established Nevarez's joint and several liability for the equitable claim of money had and received.

It is undisputed that Nevarez is the president of the Nevarez Law Firm, which is a professional corporation formed in his name. As president, he directs the Law Firm's conduct throughout all times relevant to this dispute and his conduct is deemed to be the conduct of the Law Firm itself. *See GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex. 1999) ("When actions are taken by a vice-principal of a corporation, those acts may be deemed to be the acts of the corporation itself."); *see also Carl J. Battaglia, M.D., P.A. v. Alexander*, 177 S.W.3d 893, 901 (Tex. 2005) ("While a professional association with a single principal can act only through that person, the person can act outside the scope of his employment as principal of the association."); *see also* TEX. BUS. ORGS. CODE ANN. § 301.010(a)(1) and (2) (providing that a professional entity is jointly and severally liable for an error, omission, negligent or incompetent act, or malfeasance committed by a person who is an owner, managerial official, employee, or agent of the entity; and while providing a professional service for the entity during the course of the person's employment, commits the error, omission, negligent or incompetent act, or malfeasance).

In corresponding with USAA FSB, Nevarez identified himself as the president of the Law Firm. Specifically, he used the Law Firm letterhead to inform USAA FSB that he personally would serve as the escrow agent of the proposed transaction, and in doing so he provided his State Bar license number issued to him personally. This letter also stated that the term, "'Escrow Agent'[]

15

shall include the direct operations of the Firm." Accordingly, Nevarez did not act outside his professional employment with the Firm.

It is undisputed that, on June 6, 2017, Nevarez informed USAA FSB that the escrow agent would only disburse the funded loan amount in accordance with the closing statement attached with his letter, and he further stated that the disbursements made by the Firm would not deviate from that statement. After an exchange of emails, the home purchase closing was scheduled to take place on June 29, 2017, at noon, at the Nevarez Law Firm. At 8:43 a.m. on that date, USAA FSB wire transferred funds in the amount of $174,281.80, directly to the bank account of the Firm. From Nevarez's position as principal owner of the Law Firm, it necessarily follows that the bank account is principally controlled by him. Indeed, on behalf of the Firm, Nevarez does not dispute the receipt of the funds. As noted above, Nevarez even admitted he had promised to return the monies that he deemed "appropriate," but ultimately, despite having received several requests for return of the funds, Nevarez concluded his firm's receipt of such funds was "tantamount to a gift." Throughout the relevant period, the evidence conclusively established that Nevarez acted in the course and scope of his duties as a principal officer of the Law Firm.

Because the trial court's judgment may be upheld on Nevarez's joint liability with the Firm, we need not consider his alternative argument in Issue Two regarding an alter-ego theory or a piercing of the corporate veil. We overrule Nevarez's first, third and fourth issues to the extent they address Nevarez individually.

We affirm the trial court's judgment.

## IV. CONCLUSION

Having overruled all five issues, we affirm the trial court's summary judgment granting

16

USAA FSB's claim for money had and received against Michael Nevarez, individually, and against The Law Offices of Michael R. Nevarez, a Professional Corporation d/b/a Nevarez Law Firm, P.C.

GINA M. PALAFOX, Justice

March 5, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

17