

## NUMBER 13-24-00343-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

SOUTHERN STAR TRANSPORT, INC.,        **Appellant,**

**v.**

LOS FRESNOS CONSTRUCTION, INC.,        **Appellee.**

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 3
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Peña**

Appellant Southern Star Transport, Inc. (Southern Star) appeals the trial court's take-nothing judgment in favor of appellee, Los Fresnos Construction, Inc. (LFC). In twelve issues, which we reorganize and renumber as three, Southern Star argues that: (1) LFC failed to file a verified denial; (2) the evidence is legally and factually insufficient to support the trial court's findings of fact; and (3) the trial court erred in reaching its

conclusions of law. We affirm.

## I.    BACKGROUND

This appeal arises from a bench trial involving claims for sworn account and breach of contract. The parties disputed whether LFC was responsible for payment to Southern Star.

The trial court heard evidence whereby it was established through testimony that Texas Descon (Descon), which was not a party to the lawsuit, was hired by Pharr-San Juan-Alamo Independent School District (PSJA) as a general contractor to build Ramirez Elementary School (the Ramirez Project). Descon then entered into an agreement with LFC to do site work on the Ramirez Project and a separate agreement with Southern Star to provide and haul building materials for the Ramirez Project. Upon delivery of the material to the construction site, Southern Star sent invoices to LFC and LFC forwarded those invoices to Descon for payment. Descon owed payment "upon delivery of the building materials" and paid both parties with a joint check.

The trial court found that during construction of the Ramirez Project, Descon "began to have financial problems, failed to pay several of its subcontractors and material suppliers and went into bankruptcy." On February 12, 2019, Southern Star filed suit on a sworn account and for breach of contract against LFC alleging that "[Southern Star] sold to [LFC] one or more items of goods, wares, merchandise, or services" and that "[LFC] accepted each item and became bound to pay [Southern Star] the designated price, which is a reasonable, usual, and customary price for each item." Southern Star further alleged that LFC "fail[ed] to make payments on the account."

Southern Star's managing partner, Tommy Lee Freeman, testified that Descon was a general contractor, LFC "was basically a site contractor," and Southern Star "provided hauling of dirt, caliche, some hot mix[,] . . . [and] just various materials [LFC] used for their construction." Freeman further testified that he was aware that "[LFC] was a subcontractor to Descon," and he considered the relationship with LFC as an "open account" on the Ramirez Project.

During cross-examination, Freeman acknowledged that he did not "remember any of this stuff" and that "[t]his is stuff that [he] gathered from the documents that [he had] been reviewing." When pressed for details about "any written agreement between [Southern Star] and [LFC]," Freeman admitted that there was no written agreement and that he was not "personally aware" of the documents that were admitted as evidence by Southern Star. The record reflects that these were the same documents produced in discovery that Freeman "[had] been reviewing." Freeman further acknowledged that Southern Star's salesman, Joe Salinas,[1] was the person "that was involved directly with LFC" since he was [Southern Star's] salesman at the time of the work performed under the agreement. Lastly, Freeman conceded on cross-examination that a check from Descon admitted into evidence listed both Southern Star and LFC as payees and that the agreement for materials and hauling materials to the Ramirez Project construction site was between Descon and Southern Star. When asked by counsel whether the "invoices that [Southern Star] submitted [were for] any of the work done after February 11, 2015, Freeman responded that the sworn account was closed after the final invoice though he could not remember.

---

[1] Salinas was not called to testify by either party.

Gisela De La Fuente, LFC's former office manager, testified that she was familiar with the invoices because they "were sent to [her]," she "always sent [them] to [Descon], and [Descon] was to pay." De La Fuente stated that Descon "would make a check out to both [Southern Star and LFC]."

On cross-examination, De La Fuente testified that LFC and Southern Star "had a joint–checking agreement with Descon" regarding the Ramirez Project. De La Fuente further testified that payment was due from Descon when the construction material was delivered. According to De La Fuente, the agreement between Descon and Southern Star covered the materials and the hauling of materials to the construction site, whereas LFC's agreement with Descon "covered other things," particularly the site work.

At the conclusion of the trial, the court entered a take-nothing judgment in favor of LFC. Southern Star requested findings of fact and conclusions of law. The trial court entered the following:

<u>FINDINGS OF FACT</u>

1.  [Descon], a construction company, had a construction contract with [PSJA] to build Ramirez Elementary School.

2.  [Descon] contracted with [LFC] and [Southern Star] to haul certain materials to the construction site to be used by [LFC] to do site work at [the Ramirez Project].

3.  [Descon] entered into a "joint check agreement" with [LFC] and [Southern Star] whereby [Descon] would issue a joint check to both Parties for each load of materials delivered by the Parties to the construction site.

4.  Payment for the hauling of building materials to the construction was due from [Descon] upon delivery of the building materials to the construction site.

5.  During the construction of [the Ramirez Project], [Descon] began to have financial problems, failed to pay several of its subcontractors

4

and materials suppliers and went into bankruptcy.

6.    [LFC] and [Southern Star] were two of the subcontractors that [Descon] failed to pay for work performed and construction material delivered.

7.    [Descon] failed to pay [Southern Star] a total of $26,508.00.

8.    [Southern Star] filed suit in this case more than 4 years after the day that the dealings in which [Southern Star] and [LFC] were interested together ceased. *See* TEX. CIV. PRAC. & REM. CODE § 16.004(c).

## CONCLUSIONS OF LAW

9.    [Southern Star] failed to prove by a preponderance of the evidence that it had a contract with [LFC] to deliver construction materials to [the Ramirez Project].

10.    [Southern Star] failed to prove by a preponderance of the evidence that "[Southern Star] sold to [LFC] one or more items of goods, wares, merchandise, or services" as alleged in [Southern Star's] Petition for Suit on Sworn Account and Breach of Contract.

11.    [Southern Star] failed to prove by a preponderance of the evidence that [LFC] accepted "items of goods, wares, merchandise, or services" and ["]became bound to pay" [Southern Star] a "designated price, which is reasonable, usual, and customary for such an item," as alleged in [Southern Star's] Petition on Suit for Sworn Account and Breach of Contract.

12.    [Southern Star] failed to prove by a preponderance of the evidence that [LFC] "has defaulted by failing to make payments on the account," as alleged in [Southern Star's] Petition for Suit on Sworn Account and Breach of Contract.

13.    [Southern Star] failed to prove by a preponderance of the evidence that [LFC] breached any contract with [Southern Star].

14.    [Southern Star failed to prove by a preponderance of the evidence that [LFC] owed it any money from the Ramirez [Project].

15.    The Court finds by a preponderance of the evidence that [Southern Star] failed to file suit before the statute of limitations ran and therefore its suit against [LFC] was barred by Section 16.004(c) of the Texas Civil Practices and Remedies Code.

16. The Court thus enters judgment for [LFC] on all claims brought by [Southern Star] and orders that [Southern Star] take nothing in this lawsuit.

17. The Court finds that each Party will bear its own attorneys fees and costs of court.

This appeal followed.

## II. VERIFIED DENIAL

By its first issue, Southern Star contends that the trial court erred when it entered a take-nothing judgment because "[LFC] failed to file a written verified denial and as a matter of law [Southern Star] was entitled to judgment." See TEX. R. CIV. P. 185 ("A party resisting [a suit on sworn account] shall comply with the rules of pleading as are required in any other kind of suit, provided, however, that if he does not timely file a written denial, under oath, he shall not be permitted to deny the claim, or any item therein, as the case may be."); *Villarreal v. Myers*, No. 13-20-00215-CV, 2022 WL 868537, at *6 (Tex. App.—Corpus Christi–Edinburg Mar. 24. 2022, no pet.) (mem. op.).

LFC's answer as included in the appellate record did not include a verified denial. However, LFC explained in its brief that it alerted the district clerk's office that the appellate record was incomplete because "the page containing the '[v]erification' was left off" of the original filing. *See* TEX. R. APP. P. 34.5(c)(1) ("If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may by letter direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item."). The district clerk's office subsequently filed an amended appellate record on March 18, 2025. *See id.* R. 34.5(c)(3) ("Any supplemental clerk's record will be part of the appellate record."). After reviewing the amended record, it appears that LFC's original answer included a verified denial. *See id*. Southern Star's first

6

issue is overruled.

### III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

Southern Star argues (1) legally and factually insufficient evidence supports findings of fact two, four, seven, and eight; and (2) the trial court erred in conclusions of law nine through twelve concerning Southern Star's sworn account and breach of contract claims.

### A.    Standard of Review

"In an appeal from a bench trial, the trial court's findings of fact have the same force and effect as jury findings." *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534, 539 (Tex. App.—Eastland 2012, no pet.); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 147 (Tex. App.—Dallas 2012, no pet.). "[W]hen a party challenges the trial court's findings of fact, . . . we review those findings by the same standards we use in reviewing the sufficiency of the evidence supporting a jury's answers." *Garcia v. Tautenhahn*, 314 S.W.3d 541, 544 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.). "If there is any evidence of a probative nature to support the trial court's judgment, we will not set it aside, and we may not substitute our findings of fact for those of the trial court." *Id*. "Unchallenged findings of fact are binding on the appellate court, unless the contrary is established as a matter of law or there is no evidence to support the finding." *Sharifi*, 370 S.W.3d at 147; *Hegar v. El Paso Elec. Co.*, 629 S.W.3d 518, 527 (Tex. App.—Austin 2021, pet. denied); *see also Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014) ("We defer to unchallenged findings of fact that are supported by some evidence."). "When, as here, the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be

challenged for sufficiency of the evidence." *Sharifi*, 370 S.W.3d at 147. We review the trial court's findings of fact for both legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

A legal sufficiency challenge may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In determining whether there is legally sufficient evidence to support the finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Id.* The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 822.

In reviewing the factual sufficiency of a finding where the party challenging it does not have the burden of proof, as here, we weigh all the evidence in the record and set aside the challenged finding only if it is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We must defer to the trial court's determinations of witness credibility and demeanor. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

We review a trial court's conclusions of law de novo, whether express or implied. *See BMC Software*, 83 S.W.3d at 794; *Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.*,

156 S.W.3d 630, 636 (Tex. App—Tyler 2004, no pet.). "The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness." *Id.* "We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence." *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). "Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory." *Id.* "Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law." *Id.*

## B.      Analysis

### 1.      Findings of Fact

Findings two, four, and seven concern the same ultimate issue: whether the evidence permitted the trial court to conclude that Descon, rather than LFC, was responsible for payment to Southern Star for providing and hauling construction material to the Ramirez Project site. We therefore address those findings together.

Freeman testified that Southern Star maintained an account associated with LFC and that invoices for payment were sent to LFC. However, Freeman also acknowledged that Descon issued at least one payment jointly to Southern Star and LFC and conceded that the parties operated under a joint-check agreement regarding the Ramirez Project. Freeman ultimately acknowledged on cross-examination that Southern Star submitted invoices that Descon paid through joint checks issued to Southern Star and LFC.

De La Fuente likewise testified that Descon was responsible for payment upon delivery of the materials to the Ramirez Project site and that invoices received from

9

Southern Star were "always sent to [Descon], and [Descon] was to pay." De La Fuente further testified that the payment arrangement regarding the Ramirez Project "was between Descon and Southern Star . . .[i]t was never with [LFC]" and that the agreement, as between Descon and Southern Star, covered the materials and the hauling of materials to the Ramirez Project site, whereas LFC's agreement with Descon "covered other things," particularly the site work.

Freeman acknowledged that Descon issued at least one joint payment to Southern Star and LFC and agreed that Descon ultimately paid invoices submitted in connection with the Ramirez Project. De La Fuente likewise testified that invoices received from Southern Star were forwarded to Descon for payment and that Descon was responsible for payment upon delivery of the materials. The trial court was entitled to credit that testimony and resolve any conflicts in the evidence accordingly. *See In re J.O.A.*, 283 S.W.3d at 346. Viewed in the light most favorable to the judgment, this evidence constitutes more than a scintilla of evidence supporting findings two, four, and seven. *See City of Keller*, 168 S.W.3d at 822.

Considering the record as a whole, we cannot conclude those findings are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ortiz*, 917 S.W.2d at 772. Accordingly, we overrule Southern Star's challenges to findings two, four, and seven.

The trial court also found that Southern Star filed suit more than four years after "the dealings in which [Southern Star] and [LFC] were interested together ceased." Freeman acknowledged that he could not remember whether any of Southern Star's invoices reflected work performed after February 11, 2015, and De La Fuente testified

10

that the Ramirez Project was the last project involving both Southern Star and LFC. From this evidence, the trial court could reasonably infer that the parties' dealings ceased no later than February 11, 2015. Because Southern Star did not file suit until February 12, 2019, the evidence supports the trial court's finding that suit was filed more than four years after the parties' dealings ceased. *See City of Keller*, 168 S.W.3d at 822; *Ortiz*, 917 S.W.2d at 772. We therefore overrule Southern Star's challenge as to finding of fact eight.

### 2. Conclusions of Law

We review conclusions of law de novo. *BMC Software Belg., N.V.*, 83 S.W.3d at 794; *see also Dittman v. Cerone*, No. 13-11-00196-CV, 2013 WL 5970356, at *4 (Tex. App.—Corpus Christi–Edinburg Oct. 31, 2013, no pet.) (mem. op. on reh'g). "If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *BMC Software Belgium, N.V.*, 83 S.W.3d at 794.

A suit on sworn account requires proof that the defendant became bound to pay for goods or services provided. *See PennWell Corp. v. Ken Associates*, Inc., 123 S.W.3d 756, 765 (Tex. App.—Houston [14th Dis.] 2003, pet. denied). A breach of contract claim requires proof of a valid contract between the parties. *See Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 713 (Tex. App.—Corpus Christi–Edinburg, 2006, pet. denied).

The trial court concluded that Southern Star failed to prove by a preponderance of the evidence that LFC contracted with Southern Star or became obligated to pay the account at issue. Those conclusions flow from the trial court's supported findings that Descon was responsible for payment under the parties' joint–check agreement and that

11

Descon failed to pay the remaining balance owed to Southern Star.

The trial court concluded that Southern Star failed to prove that LFC contracted with Southern Star or became obligated to pay the account at issue. Those conclusions follow directly from the trial court's supported findings that Descon—not LFC—was responsible for payment under the parties' arrangement. Because the findings support the trial court's legal conclusions, we conclude that the trial court did not err in entering conclusions of law nine through twelve. We overrule Southern Star's challenges to those conclusions. *BMC Software Belgium, N.V.*, 83 S.W.3d at 794.

In light of our disposition, we need not address Southern Star's remaining arguments concerning limitations. *See* TEX. R. APP. P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

### IV. CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
25th day of June, 2026.

12